## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF IOWA

IN RE:                              )
                                    )    Chapter 13
JASON J JOHNSON,                    )
                                    )    Bankruptcy No. 10-03184C
        Debtor.                     )


## ORDER REGARDING TRUSTEE'S OBJECTION TO
## CONFIRMATION OF MODIFIED PLAN


This matter came before the Court on the Chapter 13 Trustee's Objection to Confirmation of Debtor's Chapter 13 plan. Debtor was represented by Sean K. Heitman. Chapter 13 Trustee Carol Dunbar represented herself. After hearing arguments, the Court took the matter under advisement. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (L).


## STATEMENT OF THE CASE

Trustee filed an objection to the confirmation of Debtor's proposed plan. Trustee argues that Debtor's plan does not meet the requirements of § 1325(b)(1)(B) because it does not contribute all of Debtor's disposable income to the plan. Debtor maintains that he is under no obligation to pay all disposable monthly income to satisfy § 1325(b)(1)(B) because Debtor has complied with § 1325(b)(1)(A) by contributing property (plan payments and other property) to pay 100% of all unsecured claims. For the reasons that follow, the Court denies Trustee's objection.

1

## FACTUAL BACKGROUND AND PARTIES' ARGUMENTS

The material facts are not in dispute. Debtor filed for Chapter 13 bankruptcy on November 24, 2010. He submitted a modified plan ("the Plan") on January 21, 2011. Debtor's schedules show that Debtor's residence, worth $64,980.00, serves as security for first and second mortgages totaling $87,940.50. The second mortgage appears to be completely unsecured, as the value of the residence is less than the $72,611.50 owed on the first mortgage. A foreclosure judgment on the first mortgage was issued against Debtor's residence in Tama County, IA on June 4, 2010.

Debtor's schedules list $7,050 in personal property. This includes a 1997 Cadillac worth approximately $1,250 and household goods and clothing worth approximately $4,300. Debtor's accompanying Schedules I and J reveal that Debtor and his spouse have "annualized current monthly income" of $95,604.00 and "monthly net income" (after expenses) of approximately $1,990.84. Debtor's Plan proposes to cure all accrued defaults ($22,752.60), maintain payments on the first and second mortgage, and pay unsecured claims in full by contributing $445.00 for one month, and then $346.28 each month for 59 months. Debtor's Plan allows the Trustee to increase Plan payments or require Debtor to contribute future tax refunds to the extent necessary to achieve a 100% dividend for unsecured creditors.

Debtor and the Trustee agree that Debtor's Plan pays 100% of all unsecured claims as required by § 1325(b)(1)(A). The Trustee argues that the Plan is not confirmable unless Debtor contributes all of his monthly net income of $1,990.84 until the claims are paid in full. Trustee claims Debtors should be required to pay the maximum amount they can afford. Trustee argues that this requirement is necessary to prevent unsecured creditors from having to wait for recovery when debtors have the ability to pay more. Trustee also contends that proposing a plan that does

2

not contribute the maximum amount of a debtor's monthly disposable income constitutes bad faith

under § 1325(a)(3).

Debtor argues that § 1325(b)(1)(A) & (B) provide a disjunctive test for confirmation over

objection. Debtor contends that a plan is confirmable if it either proposes to pay unsecured claims

in full, or it contributes all of Debtor's disposable income over the applicable commitment period.

Debtor maintains that because the Plan proposes to pay all unsecured claims in full, it satisfies

§ 1325(b)(1)(A) and the Trustee's objection is without merit.

## CONCLUSIONS OF LAW

This Court recently addressed a very similar issue and reiterated the requirements

for plan confirmation in the face of an objection. In re Moffet, No. 10-03023 (Bankr. N.D.

Iowa March 31, 2011). The Court analyzed the same interaction between subsections (A)

and (B) of § 1325(b)(1) that are at issue here. As Moffet noted, when a trustee objects to a

plan, the debtor must meet the requirements of § 1325(b)(1). Id. at 3. Section 1325(b)(1)

states:

> If the trustee or the holder of an allowed secured claim objects to the
> confirmation of the plan, "then the court may not approve the plan unless, as
> of the effective date of the plan—
>> (A) the value of the property to be distributed under the plan on
>> account of such claim is not less than the amount of such claim; or
>> (B) the plan provides that all of the debtor's projected disposable
>> income to be received in the applicable commitment period
>> beginning on the date that the first payment is due under the plan
>> will applied to make payments to unsecured creditors under the
>> plan.

§ 1325(b)(1). Subsection (A) requires 100% payment of unsecured claims. Subsection (B) is the so-called "best efforts" test, which "allows creditors or the trustee to object to confirmation on the ground that the debtor has the ability . . . [to] pay a greater dividend to unsecured creditors." In re Weber, No. 00-01683-C, slip op. at 2 (Bankr. N.D. Iowa Dec. 21, 2000) (citing In re Miller, 247 B.R. 795, 979 (Bankr. W.D. Mo. 2000) (discussing only the requirements under § 1325(b)(1)(B)).

In Moffet, as here, the debtors proposed to pay less than all of their net monthly income into the plan. Moffet, No. 10-03023 at 4. The debtors proposed, like here, to contribute future tax refunds and allow the Trustee to modify plan payments as necessary to achieve a 100% dividend for unsecured creditors. Id. at 2. There, as here, the debtors conceded they were not paying their full net monthly income into the Plan and thus not complying with subsection (B). There, as here, the debtors argued they complied with subjection (A). This Court held the plan was not confirmable because it failed to comply with § 1325(b)(1)(A). Id. at 10. The Court found that the debtors' plan proposing to pay unsecured claims failed because it relied on future tax returns that are too speculative to be "property of a value," required by § 1325(b)(1)(A) Id. at 6–10.

This case, however, differs from Moffet in an important way. There, debtor proposed to pay only 89% of claims with monthly payments and make up the remainder with future tax returns or a modification of the plan. Here, it is undisputed that the Plan complies with § 1325(b)(1)(A) because it proposes actual payment amounts to provide unsecured creditors with a 100% dividend. Future taxes are identified only as an additional payment source should Debtor's monthly payments fail. The issue in this case is not whether the payment source is speculative. It is instead whether an above-median debtor who has complied with § 1325(b)(1)(A) is nevertheless also required to comply with § 1325(b)(1)(B) if he has additional net monthly income.

4

**A. Section 1325(b)(1)(A) and (B) provide a disjunctive test.**

This Court has found that the provisions of § 1325(b)(1) are disjunctive, and that a court may confirm a plan if <u>either</u> (A) or (B) are met. <u>Moffet</u>, No. 10-03023F (citing <u>In re Parke</u>, 369 B.R. 205, 207–08 (Bankr. M.D. Pa. 2007); <u>In re Pederson</u>, 2006 WL 3000104, *5 (Bankr. N.D. Iowa Oct. 13, 2006); <u>In re Oimoen</u>, 325 B.R. 809 (Bankr. N.D. Iowa 2005); <u>In re Cox</u>, 2005 WL 681464 (Bankr. N.D. Iowa March 21, 2005). The United States Supreme Court also reached the same conclusion. <u>Hamilton v. Lanning</u> 130 S. Ct. 2464, 2469 (2010). <u>See also</u> <u>Education Assistance Corp. v. Zellner</u>, 827 F.2d 1222, 1226 (8th Cir. 1987) (noting that under pre-BAPCPA, § 1325(b)(1) "provides that if the creditor objects to the plan's confirmation <u>and the plan proposes less than full payment of the creditor's claim</u>, the plan may be approved only if it includes all of the debtor's projected disposable income for the plan's three-year period.") (emphasis added); <u>In re Jones</u>, 374 B.R. 469, 469 (Bankr. D.N.H. 2007) (stating that § 1325(b)(1) "requires compliance with <u>either</u> subsection (A) or (B), but not both . . . ." and that a "trustee's objection under § 1325(b)(1) should be denied if a debtor's plan provides for payment of all allowed unsecured claims in full . . . regardless of whether the plan provides for the debtor to pay all of his projected disposable income during each month of the plan.") (emphasis added); <u>In re Smith</u>, 196 B.R. 565, 571 (Bankr. M.D. Fla. 1996) (holding that if a "plan satisfies the full payment requirement of § 1325(b)(1)(A) . . . an analysis of the disposable income test is unnecessary."); <u>Matter of Eaton</u>, 130 B.R. 74, 78 (Bankr. S.D. Iowa 1991) (stating "[s]ection 1325(b) authorizes the court to confirm [a plan] even if the trustee or an unsecured creditor objects so long as <u>either</u> § 1325(b)(1)(A) or § 1325(b)(1)(B) is met.") (emphasis added).

The Trustee's argument here is that a debtor's plan must comply with § 1325(b)(1)(B) even if it has complied with § 1325(b)(1)(A). The Court finds that argument is without basis. Debtors who satisfy § 1325(b)(1)(A) by proposing to pay unsecured creditors in full are "not required to pay all . . . available net monthly income into a plan to satisfy a trustee's objection under Section 1325(b)(1)," even if the 100% plan may delay creditors' recovery. In re Stewart-Harrel, 2011 WL 322391, *1 (Bankr. N.D. Ga. Jan. 25, 2011) (but noting that the issue of good faith may still remain). It is undisputed that Debtor has contributed an amount of Plan payments adequate to provide unsecured creditors with a 100% return on their unsecured claims. This Court finds that Debtor has met the requirements of § 1325(b)(1)(A).

**B. The good faith requirement under Section 1325(a)(3).**

In addition to objecting under § 1325(b)(1), the Trustee has also objected under § 1325(a)(3), arguing that Debtor's Plan is not proposed in good faith. In particular, Trustee argues it improperly stretches payments to creditors over five years when Debtor has sufficient net monthly income to satisfy creditors' claims sooner. Section 1325(a)(3) states a "court shall confirm a plan if . . . (3) the plan has been proposed in good faith, and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). When determining whether a plan has been proposed in bad faith, a court should look to the totality of the circumstances and "whether the plan constitutes an abuse of the provisions, purpose or spirit of Chapter 13." In re Schachtele, 343 B.R. 661, 668 (B.A.P. 8th Cir. 2006) (citing In re LeMarie, 898 F.2d 1346, 1348 (8th Cir. 1990)). Factors a court should consider include "whether the debtor has stated his debts and expenses accurately; whether he has made any fraudulent representation to mislead the bankruptcy court; or whether he has unfairly manipulated the Bankruptcy Code." Id. at 1349–51 (noting that an inquiry into whether a debtor

6

has unfairly manipulated the Code is "central to the court's task of determining whether the plan

'constitutes an abuse of the provisions, purpose, or spirit of Chapter 13.'"). A determination of bad

faith is left to the court's discretion and may only be overturned for an abuse of discretion. In re

Kane & Kane, 406 B.R. 163, 167 (Bankr. S.D. Fla. 2009) (noting the totality of the circumstances

test is not scientific and depends on unique circumstances of a debtor).

There is a long-standing debate over whether a debtor can comply with the Code's

statutory provisions yet still have a plan rejected for bad faith. See Keith M. Lundin & William H.

Brown, Chapter 13 Bankruptcy, 4th Edition § 496.2 April 21, 2010. Some courts hold that the 2005

additions to § 1325(b) subsume the good faith requirement in § 1325(a)(3) and if a debtor's plan

complies with the technical requirements of § 1325(b), it is presumed to be filed in good faith. See

In re Spruch, 410 B.R. 839, 843–44 (Bankr. S.D. Ind. 2008) (citing In re Williams, 394 B.R. 550

(Bankr. D. Colo. 2008) (describing the three different approaches courts take to analyze good faith

under § 1325(b)).

Other courts take the opposite view. They hold that the good-faith requirement of

§ 1325(a)(3) is an additional requirement for plan confirmation, above and beyond the technical

requirements of § 1325(b). Williams, 394 B.R. at 571–72 (citing In re Upton, 363 B.R. 528, 536

(Bankr. S.D. Ohio 2007) and In re Anstett, 383 B.R. 380 (Bankr. D. S.C. 2008)). Compliance with

§ 1325(b), while necessary to confirm a plan, is not alone sufficient to confirm it. See In re

Devilliers, 358 B.R. 849, 867 (Bankr. E.D. La. 2007) (finding that "strict and technical compliance

with the means test does not necessarily satisfy any debtors' burden of good faith.").

There is also an intermediate approach. As one court described it, noting that while

technical compliance with § 1325(b)(1) is the first hurdle, a good-faith test should be used:

7

> only to ferret out those debtors engaging in subterfuge so blatant as
> to indicate that they have unfairly manipulated the Bankruptcy
> Code, or otherwise proposed their chapter 13 plan in such an
> inequitable manner that they will run afoul of § 1325(a)(3). Thus,
> the best guidance this Court can offer is the old adage of 'pigs get
> fat, but hogs get slaughtered.'

Williams 394 B.R. at 573. The Eighth Circuit appears to have adopted the "intermediate approach"

before it was so identified. LeMarie, 898 F.2d at 1349 (recognizing that § 1325(b)'s ability-to-pay

criteria subsumes most of the good-faith factors and narrows the inquiry to issues of fraud and

unfair manipulation of the Code).

The factual scenario in Williams is analogous to this case. The trustee's only allegation of

bad faith was that the debtors could pay more. Williams, 394 B.R. at 573 (noting that the

difference between the proposed plan payments and the debtor's disposable income was at most a

few hundred dollars a month). The court overruled the trustee's bad-faith objection because there

was no other evidence that the debtors were manipulating the Code. Id. Even though the difference

between Debtor's net monthly income and Plan payments in the present case is greater, the Trustee

concedes, similar to Williams, that Debtor has not made any fraudulent representations in his

petition.

The Eighth Circuit B.A.P. has recently similarly held that "it simply was not bad faith for

the [d]ebtors to follow the requirements of the Bankruptcy Code and, in doing so, obtain a benefit

provided therein." In re Thompson, 439 B.R. 140 (B.A.P. 8th Cir. 2010) (citing In re Barfknecht,

378 B.R. 154, 164 (Bankr. W.D. Tex 2007) (permitting a debtor to exclude exemptable social

security benefits from plan payments because it was allowed under the Code)). This Court has also

similarly held that, absent other factors indicating bad faith, it is not subterfuge or unfair

8

manipulation simply to take advantage of the provisions in the Code. See In re Weber, No.

00-01683-C, slip op. at 3 (Bankr. N.D. Iowa Dec. 21, 2000) (holding that debtors did not unfairly

manipulate the Bankruptcy Code by proposing to pay only three years of disposable income as

required under § 1325(b)(1)(B) of the pre-2005 Code, instead of the five requested by the trustee).

A recent case out of the Northern District of Georgia addressed the same issue, where a

trustee objected to a debtor's 100% plan under § 1325(a)(3) because the debtor was not

contributing all her net monthly income to the plan. Stewart-Harrel, 2011 WL 322391 at *2–4. The

court rejected a "per-se rule" that failing to contribute all net monthly income to a plan constitutes

bad faith, preferring instead to look to the totality of the circumstances. Id. See also In re Eury, 11

B.R. 397, 404 (Bankr. N.D. Ga. 1981) (rejecting a creditor's claim of bad faith where a debtor

proposed a 100% plan but had the ability to pay more).

The Trustee argues that, as a matter of best efforts and good faith, the Northern District of

Iowa has consistently required debtors to contribute all their net monthly income, whether or not a

plan proposes to pay all unsecured claims in full. This Court has on numerous occasions required

debtors to contribute all their disposable income to a plan, but these were all cases where a debtor

proposed to provide less than a 100% dividend on unsecured claims. See In re Kruse, 406 B.R. 833

(Bankr. N.D. Iowa, 2009); In re Matsen, 391 B.R. 847 (Bankr. N.D. Iowa 2008); In re Barbee,

2008 WL 4372406 (Bankr. N.D. Iowa Sept. 18, 2008); In re McElroy, 410 B.R. 845 (Bankr. N.D.

Iowa 2008); In re Stout, 336 B.R. 138 (N.D. Iowa 2006); In re Lampman, 2006 WL 167832

(Bankr. N.D. Iowa Jan. 17, 2006); In re Zirtman, 2006 WL 3000103 (N.D. Iowa Oct. 4, 2006); In

re Oimoen, 325 B.R. 809 (N.D. Iowa 2005); In re McCahen, 2005 WL 579687 (Bankr. N.D. Iowa

Feb. 2, 2005); In re Schrodemier, 2005 WL 783066 (N.D. Iowa April 4, 2005); In re Wessels, 311

9

B.R. 851 (Bankr. N.D. Iowa 2004); In re Franzenburg, 2004 WL 3235824 (Bankr. N.D. Iowa Dec. 30, 2004); In re Zuehlke, 298 B.R. 610 (Bankr. N.D. Iowa 2003).

The Trustee does not address these cases, but instead cites a recent Supreme Court decision stating "the intent of BAPCPA was to have debtors repay the maximum amount they can afford." Ransom v. FIA Card Services, N.A., 131 S. Ct. 716, 720–21, 725 (2011). This quoted authority specifically refers to the means test in § 1325(b)(1)(B). The "means test" was designed to ensure that "debtors who can pay creditors *do* pay them." Ransom, 131 S. Ct. at 721. When, as here, a debtor proposes a 100% plan, he elects the § 1325(b)(1)(A) option and avoids the means test under § 1325(b)(1)(B) entirely. Thus, the quote from Ransom does not apply here.

This Court finds no bad faith simply because Debtor has the ability to pay more each month and thus can repay creditors more quickly. The Trustee does not allege that the Debtor has engaged in subterfuge, fraud, or other manipulative actions. Debtor's assets are modest. Debtor is offering 100% repayment to unsecured creditors. Debtor has opted to maintain payments on his second mortgage, even though he has the ability to strip off that mortgage because it is wholly unsecured. In re Krapfl, 2010 WL 4338475, *1–2 (Bankr. N.D. Iowa Oct. 27, 2010) (following the Second, Third, Fifth, Sixth, and Eleventh Circuits, and First and Tenth Circuit BAPs in holding that a chapter 13 debtor can strip a wholly unsecured second lien on a principal residence under § 506(b)). All of these factors comprise a totality of circumstances that reveal an absence of bad faith. Debtor has simply taken advantage of a Code provision allowing him to protect his home from foreclosure and pay off his creditors over time. On this record, this Court finds Debtor's Plan was not proposed in bad faith.

**WHEREFORE,** the Court finds Trustee's objection to Debtors' Plan confirmation is

DENIED.

Dated and Entered:

May 3, 2011

_____

THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE